IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

AMANDA RAINEY                                                                                          PLAINTIFF

vs.                                                                       CIVIL ACTION NO. 2:09CV240-KS-MTP

USA INSURANCE COMPANY                                                                          DEFENDANT

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [Doc. # 20] (August 16, 2010), filed on behalf of USA Insurance Company.  The Court, having reviewed the motion, the responses, the pleadings and exhibits on file and being otherwise fully advised in the premises, finds that the summary judgment motion should be **denied**.  The Court specifically finds as follows:

## **I. FACTS**

Amanda Rainey began working for USA Insurance Company at the Gautier, Mississippi office in June 2003 in the Claims Department.  In June 2005, Rainey moved to Hattiesburg, and after a short time working in a Hattiesburg office, USA agreed to let her work as a claims adjuster in the Hattiesburg area out of her own home.  Rainey's job duties evolved over the time period she worked for USA.  She mostly handled property damage claims, and her job required her to collect police reports, interview witnesses, the claimant, and the insured, view pictures of the damage, review estimates, and make a report of her investigation to her supervisor.  *See* Bertucci Dep. 45.  Rainey conveyed offers to claimants, attorneys, and body shops in an effort to reach an agreement as to the appropriate amount to settle the claim and also was authorized to a

1

certain limit to make offers to claimants and insureds for bodily injury with a supervisor's approval. *See* Bertucci Dep. at 47.

Initially, Rainey was undisputedly an hourly employee. However, the parties dispute whether she remained an hourly employee or whether she was converted to a salaried employee when she began to work from her Hattiesburg home. Rainey states that she was an hourly employee up until her termination in 2009. *See* Pl.'s Resp., Ex. A, Rainey Dep 59-60, 65 [Doc. # 25-1]. She alleges that she faxed or emailed detailed weekly time sheets to USA. See Pl.'s Resp., Ex. B. [Doc. #25-2]. She claims that following Hurricane Katrina, USA's policy was to not pay hourly employees overtime pay, and instead, extra hours earned in one week could be used as "comp time" in a different week. *See* Pl's Resp., Ex. D, Rainey Aff. ¶ 3 [Doc. # 25-5]. Therefore, if she only worked 35 hours in a week, she would send an email to Randi Aubry, the general manager, or Dawn Bertucci, the Director of Claims, informing them that she was using her comp time. *See* Rainey Dep. at 96-97. If she worked over 40 hours in a week, she would be paid for 40 hours and would have additional comp time to apply to a subsequent week. Bertucci asked Kent Higdon, owner and CEO, to move Rainey from hourly to salary because the other adjusters working from home were paid salary, but he refused. *See* Pl.'s Resp. Ex. C, Bertucci Dep. 55, 58 [Doc. # 25-4]. Although many of the time sheets seem to have been sent to Bertucci's attention, she testified that she was not responsible for keeping the books or preparing payroll, and that she would pass them along to Aubry. Bertucci Dep. 14, 31, 57.

USA, on the other hand, insists that she was a salaried employee and provided Rainey's compensation index and pay roll records in support. The compensation index in Rainey's employment file indicates the following adjustments in her rate of pay:

      June '03 - $9.00
      Sept. '03 - $11.50
      Jan. '04 - $12.00
      July '04 - $12.50
      June '05 - $29,400.00
      July '06 - $31,500.00
      Nov. '06 - $33,000.00
      2/1/08 - $37,000.00

*See* Def.'s Mot. Summ. J., Aubry Aff., Ex. USA00016 [Doc. # 20-1]. The June '05 entry and all entries after that were initialed by Higdon. USA notes that the same month Rainey was permitted to work unsupervised outside of the Gautier office, she was moved to salary. All other claims adjusters were paid on a salary basis, and USA claims Rainey's time sheets were "insignificant to Rainey's compensation, but [USA] felt that she was providing them to bolster some belief of the extent of work she was doing since she had no direct supervisor." Mot. Summ. J. 3-4. Aubry testified that Rainey "regularly received each bi-weekly pay period a predetermined amount constituting all of her compensation and this amount was not subject to reduction because of variations in the quality or quantity of the work performed." Aubry Aff. ¶ 5. USA asserts that Rainey's paychecks continued to have the code HB (hourly basis), and not SB (salary basis), due to an administrative oversight when she was switched to salary in 2005. Def.'s Mot. Summ. J. 3 n.2.

      Rainey's payroll history report shows that during the relevant three year time period before filing this case,[1] she was generally paid the same amount each biweekly pay period despite the hours reflected on her self-reported time sheets, although there are some anomalies. Starting

---

[1] The suit was filed October 28, 2009, in the Circuit Court of Hinds County, Mississippi. The maximum period in which Rainey can collect overtime is two years generally, but three years for wilful violation of the FLSA. *See* 29 U.S.C. 255(a).

in October of 2006, six checks were issued from October 28, 2006 until the end of the year. The first two are for $1,211.60, which matches her alleged base pay of $31,500.00 during that time frame, and the third is a $400 bonus check. The final three checks for 2006, do not match her base pay in early 2006 or her new base pay as of November 2006 of $33,000.00. One dated November 30, 2006 is for $1,142.35 for 72 hours, one dated December 14, 2006 is for $ 1,217.72 for 76.75 hours, and the one dated December 28, 2006 is for $1,542.35 for 72 hours with a $400 bonus. While the hourly rate works out as $15.87 for all these checks, which would match an annual salary of $33,000.00, there is no indication in the record whether the deduction of hours was a qualified deduction from an annual salary or whether Rainey was being paid for the hours she worked. Although Rainey provided 150 pages of self-reported time sheets, Rainey's time sheets for this time period were not produced. In 2007, she was paid either $1,269.28 or $1,669.28 (base pay plus monthly $400 bonus). In January 2008, she received two checks: a January 10, 2008 check for $1,253.41, representing 79 hours of work, and a January 24, 2008 check for $1,669.28. The time sheets for the anomalous check dated January 10, 2008 show that for this time period, Rainey reported working 71 hours.[2] After her February 2008 raise, she was paid either $1,423.04 or $1,823.04 (base pay plus monthly $400 bonus). In the most recent year, 2009, Rainey was paid either $1,423.04 or $1,823.04 (base pay plus monthly $400 bonus) for each pay period with the exception of her last pay period, dated June 25, 2009 for $1,280.73.[3]

---

[2]From December 28, 2007 to January 10, 2008, she reported 8 hours vacation, 10 hours comp time, and 53 regular working hours, totaling 71 hours. The office was closed January 1, 2008, which may account for the additional 8 hours for which she was paid.

[3]This check is likely reduced because Rainey was terminated before the end of the pay period which would be a qualified deduction if Rainey was a salaried employee. Because other anomalous checks exist, the Court need not decide this.

Following her termination on June 24, 2009, she brought this action on July 21, 2009, in Hinds County Circuit Court to recover unpaid overtime. USA removed the case to this Court and claims that Rainey, as a salaried employee, is exempt from the overtime requirement. Alternatively, it argues that if Rainey was hourly, her claim should be denied because she allegedly cleared crucial information regarding her actual work time from her computer before returning it.  This issue is thoroughly addressed in USA's Motion for Sanctions for Spoliation [Doc. # 22].

## II. STANDARD OF REVIEW

Summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004).  Material facts are those that "could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (internal citations omitted).  Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" on that issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor."

*Breen v. Texas A&M Univ.*, 485 F.3d 325, 331 (5th Cir. 2007). If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The nonmovant is not entitled to merely rest on his pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). If the nonmovant responds and still "no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

### III. APPLICATION

The Fair Labor Standards Act ("FLSA") requires that employers pay overtime, or not less than one and one-half times the regular rate at which he is employed, to a non-exempt employee who works longer than 40 hours in one workweek. *See* 29 U.S.C. § 207(a)(1). This provision does not apply to certain exempt employees, such as "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). A job title alone is not sufficient to determine whether an employee is exempt, but instead is based on the employee's salary and duties. 29 C.F.R. § 541.2. The Code of Federal Regulations defines an employee employed in an administrative capacity as one "(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ; (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of

discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(1)-(3). An employee is paid on a "salary basis"if "the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602. The Court may consider several factors to determine if the employee exercises discretion and independent judgment such as:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). "Employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c). "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e). Specifically, the Code of Federal Regulations lists insurance claim adjusters as its first example of exempt administrative employees stating that:

7

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. § 541.203(a).

The Court finds that there is a genuine issue of material fact whether Rainey was an exempt employee. Undisputedly, Rainey's rate of pay was more than $455 per week for the relevant time period. Further, her job duties as a insurance claims adjuster, particularly one who was allowed to work from home without direct supervision, would likely meet the definition of an employee exercising discretion and independent judgment. Although Rainey may not have been authorized to settle all claims regardless of the amount, she exercised independent judgment in collecting pertinent information regarding the claims through interviews, inspections, and reviews and making recommendations based on the information collected. Therefore, Rainey appears to meet the definition of "an employee employed in an administrative capacity."

However, USA has failed to undisputably show that Rainey's biweekly pay was salary based and "not subject to reduction because of variations in the quality or quantity of the work performed." At least four of Rainey's paychecks have unexplained deductions during a time when USA claims that Rainey was on salary. At least one of these paychecks, dated January 10, 2008, arguably matches the hours reported by Rainey for that pay period. Both Rainey and Bertucci have testified that Rainey was not moved to salary, but remained on an hourly pay rate. Rainey's paychecks continued to contain the code, "HB:" hourly basis. These may be mere

bookkeeping errors, but the Court must view all inferences in the light most favorable to the nonmovant, and the Court determines that a reasonable juror could find that Rainey was paid on an hourly basis, and not a salary basis. Therefore, Defendant USA Insurance Company's motion for summary judgment should be denied.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment [Doc. #20] filed on behalf of Defendant, is hereby **denied.**

SO ORDERED AND ADJUDGED this the 28th day of September, 2010.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE